UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

KEVIN STANSFIELD,

                              Plaintiff,

                                                                    Case # 17-CV-6264-FPG

v.

                                                                     DECISION AND ORDER

NANCY A. BERRYHILL, ACTING
COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

Plaintiff Kevin Stansfield brings this action pursuant to the Social Security Act seeking review of the final decision of the Acting Commissioner of Social Security that denied his application for disability insurance benefits ("DIB") under Title II of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. § 405(g).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 11, 14. For the reasons that follow, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings.

**BACKGROUND**

On May 1, 2013, Stansfield applied for DIB with the Social Security Administration ("the SSA"). Tr.[1] 174-78. He alleged disability since December 31, 2011 due to high cholesterol, atrial flutter, insomnia, post-traumatic stress disorder ("PTSD"), anxiety, and depression. Tr. 206-07. On March 18, 2015, Stansfield and a vocational expert ("VE") testified at a hearing before Administrative Law Judge Connor O'Brien ("the ALJ"). Tr. 27-91. On September 18, 2015, the

---

[1] References to "Tr." are to the administrative record in this matter.

1

ALJ issued a decision finding that Stansfield was not disabled within the meaning of the Act. Tr. 12-22. On March 3, 2017, the Appeals Council denied Stansfield's request for review. Tr. 1-4. Thereafter, Stansfield commenced this action seeking review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ

proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. 20 C.F.R. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

**DISCUSSION**

**I.     The ALJ's Decision**

The ALJ's decision analyzed Stansfield's claim for benefits under the process described above. At step one, the ALJ found that Stansfield had not engaged in substantial gainful activity since the alleged onset date. Tr. 14. At step two, the ALJ found that Stansfield has the following severe impairments: degenerative disc disease of cervical spine, hyperlipidemia, atrial palpitations, PTSD, and major depressive, anxiety, and panic disorders. *Id.* At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal an impairment in the Listings. Tr. 15-16.

Next, the ALJ determined that Stansfield retained the RFC to perform light work[2] with additional limitations. Tr. 16-21. Specifically, the ALJ found that Stansfield can tolerate only occasional exposure to extreme heat and hazards; can perform unskilled work, adjust to occasional changes in the work setting, and work to meet daily goals; cannot maintain an hourly machine-driven assembly line production rate, perform team work, or be responsible for another person's work (*e.g.*, work in a supervisory role); and requires three five-minute breaks in addition to regularly scheduled breaks. Tr. 16.

At step four, the ALJ found that this RFC prevents Stansfield from performing his past relevant work. Tr. 21. At step five, the ALJ relied on the VE's testimony to determine that Stansfield can adjust to other work that exists in significant numbers in the national economy given his RFC, age, education, and work experience. Tr. 21-22. Specifically, the VE testified that

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

Stansfield could work as a furniture rental clerk, shelving clerk, and laundry sorter. Tr. 22. Accordingly, the ALJ concluded that Stansfield was not "disabled" under the Act. *Id.*

**II.  Analysis**

Stansfield argues that remand is required because the ALJ violated the treating physician rule when she evaluated the opinion of Clifford Jacobson, M.D., and that the ALJ should have contacted Dr. Jacobson to resolve perceived inconsistencies before she rejected his opinion. ECF No. 15 at 1-5; ECF No. 14. Stansfield also argues that remand is required because the ALJ created a gap in the record that she was obligated to develop when she rejected Dr. Jacobson's opinion and all other medical opinions of record. *Id.* For the reasons that follow, the Court finds that, regardless of whether the ALJ violated the treating physician rule, remand is required because the ALJ rejected all medical opinions, which rendered her highly specific RFC finding unsupported by substantial evidence.

"[A]n ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Wilson v. Colvin*, No. 13-CV-6286P, 2015 WL 1003933, at *21 (W.D.N.Y. Mar. 6, 2015) (citation omitted). Thus, even though the Commissioner is empowered to make the RFC determination, "[w]here the medical findings in the record merely diagnose [the] claimant's . . . impairments and do not relate those diagnoses to specific residual functional capabilities," the general rule is that the Commissioner "may not make the connection himself." *Id.* (citation omitted).

Here, the record contains four medical opinions aside from Dr. Jacobson's opinion: two opinions from doctors in connection with Stansfield's prior workers' compensation claim, one from a consultative examiner, and one from a state agency review physician. Tr. 92-99, 379-82,

5

670, 673, 696. None of these opinions, however, assessed Stansfield's ability to perform work-related functions, and the ALJ gave each opinion little or limited weight. Tr. 19-20.

On March 23, 2015, Dr. Jacobson completed a Mental RFC Questionnaire. Tr. 726-32. In a detailed check-box assessment, Dr. Jacobson indicated that Stansfield's impairments interfere with many of the mental abilities and aptitudes needed to do unskilled work. Tr. 728-29. He also opined that Stansfield is markedly limited in social interactions due to PTSD and panic disorder; markedly impaired in his ability to adapt due to anxiety and depression; and markedly impaired in the sustained ability to concentrate due to depression. Tr. 729. Dr. Jacobson further indicated that Stansfield has marked restriction in daily activities, maintaining social functioning, and in concentration, persistence, or pace. *Id.*

Dr. Jacobson noted that even a minimal increase in mental demands or changes in the environment would likely cause Stansfield to decompensate. Tr. 730. He opined that Stansfield's condition is likely to render him off task 10% of an eight-hour workday and absent more than four days per month. *Id.* Lastly, Dr. Jacobson indicated that, if Stansfield worked a full-time competitive position, the increased stress would worsen his anxiety, panic, and depression. Tr. 731.

The ALJ gave Dr. Jacobson's opinion little weight because it was contradicted by Dr. Jacobson's other treatment notes, unsupported by Stansfield's treatment history, and inconsistent with Stansfield's daily activities Tr. 20. Regardless of whether the ALJ properly discounted this opinion, her rejection of the only medical opinion as to Stansfield's mental capabilities—along with all of the other medical opinions—left a significant gap in the record. *See Covey v. Colvin*, 204 F. Supp. 3d 497, 507 (W.D.N.Y. 2016) (noting that the ALJ's rejection of the treating physician's opinion created a "significant and obvious gap in the evidentiary record" because "the

record contained no competent medical opinion regarding Plaintiff's RFC during the relevant time period") (emphasis in original).

Even though Dr. Jacobson's assessment was the only opinion as to Stansfield's ability to perform mental work-related functions on a regular and continuing basis[3] and the ALJ gave it only "little weight," the ALJ somehow determined that Stansfield can perform unskilled work, adjust to occasional changes in the work setting, and meet daily goals; cannot maintain an hourly machine-driven assembly line production rate, perform teamwork, or be responsible for another person's work; and requires three five-minute breaks. Tr. 16. It is unclear to the Court how the ALJ, who is not a medical professional, was able to make this highly specific determination without reliance on a medical opinion. *See Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("[J]udges, including administrative law judges of the [SSA], must be careful not to succumb to the temptation to play doctor.").

The remainder of the ALJ's decision summarizes Stansfield's testimony and treatment notes. Tr. 16-19. The treatment notes that the ALJ cites to, however, contain only raw medical evidence and do not address how Stansfield's impairments affect his functional capacity. Moreover, the ALJ's RFC analysis does not connect any of the cited evidence to the demands of light work.

Without a discussion that relates the medical evidence to the requirements of light work or reliance on a medical source's opinion as to Stansfield's functional capacity, the ALJ's decision leaves the Court with many unanswered questions and does not afford an adequate basis for

---

[3] *See* S.S.R. 96-8p, 1996 WL 374184, at *5-6 (S.S.A. July 2, 1996) ("Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting."); *see also* 20 C.F.R. § 404.1545(c) (the SSA will evaluate the claimant's ability to work on a "regular and continuing basis" when assessing his mental capacity).

7

meaningful judicial review. *See Cichocki v. Astrue*, 729 F.3d 172, 177-78 (2d Cir. 2013) (noting that the ALJ is not required to perform an explicit function-by-function RFC analysis but that "[r]emand may be appropriate . . . where other inadequacies in the ALJ's analysis frustrate meaningful review") (citation omitted).

For the reasons stated, the Court finds that the ALJ erred when she determined Stansfield's RFC without a supporting medical opinion and that the resulting RFC assessment is not supported by substantial evidence. Accordingly, remand is required.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 11) is GRANTED, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 14) is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). *See Curry v. Apfel,* 209 F.3d 117, 124 (2d Cir. 2000); 42 U.S.C. § 1383(c)(3). The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: June 26, 2018
      Rochester, New York

                                        HON. FRANK P. GERACI, JR.
                                        Chief Judge
                                        United States District Court